IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

JULIE GASKINS, Individually, and
As Personal Representative for the
ESTATE OF ANDREW S. GASKINS
2106 E. Baltimore Street
Baltimore, MD 21231

*Plaintiff*

v.

EK REAL ESTATE FUND I, LLC, AN
AFFILIATE OF EASYKNOCK, INC.,
215 Park Avenue South, Suite 1713
New York, NY 10003
Serve on:
Corporation Services Company
D/b/a CSC – Lawyers Incorporating
Service Company
7 St. Paul Street
Baltimore, MD 21211

And

EASYKNOCK, INC.,
215 Park Avenue South, Suite 1713
New York, NY 10003
Serve on:
Business Filings Incorporated
2405 York Road
Suite 201
Lutherville, MD 21093

And

TVC Funding III, LLC
Serve on: Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202

Defendants

CASE NO.:

23cv1132

**COMPLAINT AND JURY DEMAND**

Plaintiff Julie Gaskins ("Gaskins") files this Complaint against the unauthorized predatory lending tactics of Defendants EK Real Estate Fund I, LLC an Affiliate of EasyKnock, Inc., and EasyKnock, Inc., and seeks redress for, among other causes, multiple violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. (hereinafter "TILA") and Federal Reserve Board of Regulation Z, 12 C.F.R. §226 promulgated pursuant thereto, and multiple violations of the Maryland Mortgage Lending Act, MD Fin Inst. Code § 11-502, *et seq.* and the Maryland Consumer Protection Act, §§ 13-301, *et seq.* and in support thereof would show the Court as follows:

**PARTIES**

1.      Plaintiff Julie Gaskins ("Gaskins") is a resident of Baltimore City, Maryland and is the person who is the Daughter of the Late Andrew S. Gaskins and the Administrator and Personal Representative for the Estate of Andrew S. Gaskins and the Living Trust of Andrew S. Gaskins and the who owned the property at issue in this suit.

2.      Defendant EK Real Estate Fund I, LLC, an Affiliate of EasyKnock, Inc. ("EK Real Estate") is a foreign limited liability company organized and existing under the laws of the State of Delaware, but as of September 19, 2022, is authorized to do business in the State of Maryland. EK Real Estate conducted business in this state before that time, including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. EK Real Estate's principal office is located at 215 Park Avenue South, Suite 1713, New York, NY 10003, and it may be served with a copy of the Complaint by and through its registered agent for service, Corporation Services Company d/b/a CSS – Lawyers Incorporating Service Company, 7 Saint Paul Street, Baltimore, Maryland 21211.

3.      Defendant EasyKnock, Inc. ("EasyKnock") is a foreign corporation organized and existing under the laws of Delaware whose principal office is also 215 Park Avenue Sout, Suite 1713, New

York, NY 10003, EasyKnock is the sole member of Defendant EK Real Estate. EasyKnock regularly engaged in business in Maryland prior to registering with the Maryland Secretary of State for the right to do business in Maryland, including in connection with the transactions at issue in this lawsuit. EasyKnock formed their corporation in Maryland in September 2022, at least a year AFTER this transaction occurred. Business Filings Incorporated is the resident agent and can be served at: 2405 York Road, Suite 201, Lutherville, MD 21093.

4.      Defendant TVC Funding, III ("TVC Funding") is a foreign corporation organized and existing under the law of the State of Delaware and is not authorized to do business in the State of Maryland. TVC Funding conducted business in this state including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. Thus, TVC Funding may be served through the Maryland Secretary of State via US Mail: Maryland Secretary of State – Service of Process, 16 Francis Street, Annapolis, Maryland, 21401.

## JURISDICTION

5.      Jurisdiction is proper in this Court for the violations in Truth-In-Lending Act pursuant to 15 U.S.C. §§ 1601, *et seq.,* as well as 28 U.S.C. §§ 1331 and 1137. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000 excluding interest and costs. This Court has jurisdiction over the Maryland state law claims under principles of pendent and ancillary jurisdiction.

6.      This Court has general personal jurisdiction over Defendants EK Real Estate, EasyKnock, and TVC Funding under the Maryland long-arm statute, Md. Courts Jud. Proc. Code Ann. § 6-103, *et seq.,* because, as described in this Complaint, each Defendant has purposefully availed itself of the benefits of conducting business in Maryland, each Defendant's contacts with Maryland are continuous and systematic, and each Defendant can be considered essentially at

home in Maryland. This Court also has specific personal jurisdiction over Defendants EK Real Estate, EasyKnock, and TVC Funding under the Maryland long-arm statute, Md. Courts Jud. Pro. Code. Ann. § 6-103, *et seq.*, because as described in this Complaint, each Defendant purposefully directed its wrongful activities at Plaintiff Gaskins, a resident of this forum, each Defendant's conduct caused, and Plaintiff Gaskins's suit seeks redress for, harm caused by each of the Defendant's wrongful actions which either took place inside of this forum and/or were purposefully directed at Plaintiff Gaskins in this forum.

## VENUE

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), MD Real Prop. Code § 3-104 and Md. Code Ann. Com. Law §§ 13-101, *et seq* since this case arises form a dispute concerning real property situated in Baltimore City, Maryland and because Baltimore City, Maryland is a judicial district in which the underlying transactions and a substantial part of the events or omissions giving rise to the claims occurred. Venue is also proper pursuant to 28 U.S.C. § 139(b)(1) because, for venue purposes, each Defendant is deemed to reside in Baltimore, Maryland since each Defendant is subject to the Court's personal jurisdiction in this judicial district with respect to this civil action in question and, for venue purposes, all Defendants are deemed residents of the State in which the district is located.

## FACTS

8.      On November 3, 1981, Andrew Gaskins, the Late father of Julie Gaskins took title to the Property with Ulysses Cawthon by deed recorded in Liber 4118 at folio 356.

9.      Mr. Cawthon died on December 20, 2009, vesting fee simple title to the Property to the late Andrew Gaskins by operation of law.

10.     On December 23, 2019, Mr. Gaskins, the decedent, obtained a reverse mortgage loan secured against the property by deed of trust recorded in Liber 21860 at folio 327.

11.     On April 3, 2020, the decedent died, and Estate No. 194782  was opened with the Register of Wills for Baltimore City.

12.     On May 20, 2020, Julie Gaskins was appointed personal representative.

13.     On August 16, 2021, Julie Gaskins, in her capacity as "Personal Representative for the Estate of Andrew S. Gaskins" sold the property to EK Real Estate Fund I, LLC for $441,000.00.

14.     EK Real Estate paid off the reverse mortgage for $184,383.80.

15.     EK Real Estate financed its purchase of the property with a $294,000.00 loan from TVC Funding III, LLC ("TVC Funding") which was secured by a purchase money deed of trust recorded in Liber 24296 at folio 170.

16.     EasyKnock has established relationships, including Lendingtree.com, to target consumers who may not otherwise qualify for traditional home equity loan products, in an attempt to lure dejected consumers into a confusingly financing product. (See Exhibit "A" - Press Release – Easyknock Partners with LendingTree to Connect Consumers in Need of Equity Release, which is attached hereto and incorporated herein.)  Further, upon information and belief, EasyKnock used online target ad words through both index search engines and social media websites to increase its visibility on searches for home equity lenders or similar residential home-backed bridged loans.

17.     Ms. Gaskins reached out to Easy Knock July 2021 and Easyknock assured her that she could "release" some of the equity in her property when the property was sold.

18.     All communications concerning this transaction between Gaskins were with EasyKnock and its employees or representatives. All material sent to Gaskins was sent by EasyKnock, the sole Member to Defendant EK Real Estate.

19.     None of the Defendants TVC Funding, EasyKnock or EK Real Estate is a qualified lender in Maryland according to the Nationwide Multi State Licensing System. At the time of the

transaction, EasyKnock was not even registered to conduct any type of business in Maryland – despite regularly doing so.

20.     To induce Gaskins to close on the "Sale-Leaseback" loan transaction, Defendants EasyKnock and EK Real Estate provided Gaskins with examples of how the transaction would work.

21.     Concluding that she had no other options and facing personal financial pressure, on or about August 16, 2021, Gaskins agreed to proceed with Defendants' EasyKnock and EK Real Estate's proposed "Sale-Leaseback" loan transaction.

22.     Based upon their representations about the transaction, Gaskins deeded the property to Defendant EK Real Estate for a nominal purchase price of $441,000.00 according to the Sale/Purchase Agreement.

23.     However, EK Real Estate, EasyKnock, and TVC Funding recorded the deed as being purchased for $294,000 with a loan from TVC Funding recorded in Liber 24296 at folio 170 – the Purchase Deed of Trust.

24.     TVC Funding is not a licensed lender in any State of April 27, 2023. Licensed lenders are familiar with the requirements and restrictions imposed on mortgage lenders under federal and Maryland law, including those found in the Truth-in-Lending Act.

25.     TVC Funding either did know or should have known that Defendants EasyKnock and EK Real Estate's "Sale-Leaseback" loan transaction with Gaskins and at least scores of other Maryland citizens failed to comply with these requirements and restrictions. Nevertheless, Defendant TVC Funding facilitated and enabled Defendants EasyKnock and EK Real Estate's scheme by providing funding for a substantial portion of their improper loan transactions in Maryland, including that of Ms. Gaskins.

As a further part of these transactions, Gaskins entered into a Residential Lease Agreement with Defendant EK Real Estate (the "Lease") (See Exhibit "B" - Residential Lease Agreement, which is attached hereto and incorporated herein.) The Lease was for an initial period of twelve (12) months at a rental rate of $29,136 per year ($2,428.00 per month), and an additional $76,032 was held by EasyKnock as "Rent Holdback" (See Exhibit "C" Amendment to Purchase Agreement Dated August 16, 2021 between EK Real Estate Fund I, LLC and Julie Gaskins, which is attached hereto and incorporated herein.)

27.    The processing fee was $13,186.00. (See Exhibit "C" Amendment to Purchase Agreement Dated August 16, 2021, between EK Real Estate Fund I, LLC and Julie Gaskins, which is attached hereto and incorporated herein.)

28.    An Option Value was also included as $147,000.00. (See Exhibit "C" Amendment to Purchase Agreement Dated August 16, 2021, between EK Real Estate Fund I, LLC and Julie Gaskins, which is attached hereto and incorporated herein.)

29.    For the "right" to enter into a Lease for her property – potentially, in perpetuity – EK Real Estate charged Gaskins $105,168, an amount which was deducted from the $441,000 alleged "Contract Sales Price." The $29,136 per year rent for year one of the Lease escalated 2.5% in every consecutive one-year term of the Lease (hereinafter, the "Base Rent"). However, to conceal the true amount of the Base Rent and induce Gaskins to enter into the transaction, Defendant EK Real Estate held back $76,032.00 as pre-paid Base Rent. (See Exhibit "C" Amendment to Purchase Agreement Dated August 16, 2021, between EK Real Estate Fund I, LLC and Julie Gaskins, which is attached hereto and incorporated herein.)

30.    Defendant EK Real Estate also withheld an additional $35,000.00 as Repair Holdback Agreement. This was held in escrow and to be used when Gaskins paid for repairs and submitted

the bill to Easyknock. (See Exhibit "D" Repair Holdback Agreement, which is attached hereto and incorporated herein.)

31.     Upon information and belief, the monthly Base Rent charged by Defendants EasyKnock and EK Real Estate to Gaskins exceeded the rental rates in Baltimore City, Maryland for similar properties. Indeed, Defendants EasyKnock and EK Real Estate used a set formula (and not market rates) to charge victims of their wrongful "Sale-Leaseback" loan scheme, like Plaintiff Gaskins a monthly Base Rent equal to approximately 0.75% funds provided by TVC Funding to EasyKnock and EK Real Estate at close of the purchase of the Property (an amount equivalent to approximately 9% interest per year).

32.     On August 16, 2021, Gaskins signed the first of several Sale Leaseback Loan Agreements with Defendant EK Real Estate. Those agreements were countersigned by Jarred Kessler[1], who is the Founder and President of EasyKnock and EK Real Estate.

33.     Mr. Kessler should have known about the regulatory requirements for Sale Leasback mortgages as he is a former employee of Cantor Fitzgerald.

34.     In essence, Defendants stole Gaskins' property worth at least $441,000 for a total of $27,507.94 in value paid to Gaskins in cash at closing.

35.     At the same time, pursuant to the "Sale-Leaseback" scheme, Defendants EK Real Estate and EasyKnock strapped Gaskins rental payments of $29,136 for the first twelve months of a lease, plus an additional $76,032.00 labeled as "Rent Hold Back" was hidden in an exhaustive list of fees to inflate the purchase price.

---

[1] Jarred Kessler and Cantor Fitzgeral (his former employer) were cited and fined by FINRA and the SEC for failing to adequately supervise sales of microcap securities and sole more than 73.6 Billion shares of microcap securities without conducting adequate due diligence. They also failed to establish and implement an anti-money laundering ("AML") program that was reasonably designed to detect and cause the reporting of potentially suspicious activity related to the microcap securities business. See Financial Industry Regulatory Authority Letter of Acceptance, Waiver and Consent No. 2012034964301.

36.     While Gaskins still had "equity" in the home after the sale, the deal was structured in a way that she could not access that equity unless she either bought back the home or agreed to sell it to a third party. Buying back the home would require Gaskins to pay the alleged "Purchase Price" and not the price EK Realty and Easyknock paid for the property. This set a severely difficult hurdle, given that Gaskins needed the money from EasyKnock and EK Real Estate because she was already in a difficult financial situation. EasyKnock and EK Real Estate had exclusive possession over what even EasyKnock and EK Real Estate acknowledge was Gaskins's equity or "stake" in the property until this financial burden could be met or Gaskins was forced to relinquish her rights in the Option Agreement and allow her home to be sold to a third party and incur even more costs in the process.

37.     No disclosures were provided to Gaskins by either Defendants EasyKnock or Ek Real Estate pursuant to the Truth-In-Lending Act or the Maryland Annotated Code, which require the following disclosures, among others, be given to Gaskins before she entered into this transaction:

a.     Full disclosure of loan costs and terms;

b.     The right of rescission;

c.     Disclosing to the borrower when mortgage was reassigned;

d.     Disclosure of the caps on high mortgage costs;

e.     Assessing whether the borrower had the ability to repay the loan prior to entering into the transaction with the borrower;

f.     The right not to complete the transaction merely because the borrower received prior estimates of closing costs or because the borrower completed and application; and

g.     The receipt of the Home Mortgage Loan Information Document and the corresponding Acknowledgement of Receipt.

38.    Indeed, beyond merely reviewing three months of statements for one bank account and paystubs for just two months, neither EasyKnock nor EK Real Estate (nor TVC Funding) conducted a credit check or any other substantive assessment of Gaskins' financial ability to repay the "loan" or to pay the monthly Base Rent, Additional Rent, or other amounts due under the Lease.

39.    Thus, Defendants knew Gaskins would be unable to pay the monthly rent and other Lease payments, let alone quality for another loan to regain title to her residential homestead Property.

40.    Upon information and belief, Defendant TVC Funding is involved in the substantial majority if not all of Defendants EasyKnock and EK Real Estate's transactions with residential homeowners. Therefore, Plaintiff Gaskins alleges that TVC Funding is aware of the scheme perpetuated by Defendants EasyKnock and EK Real Estate and violations of statutes and other duties as set forth below; and further alleges that Defendant TVF Funding aided and abetted Defendants EasyKnock and EK Real Estate in the violations set forth below:

**<u>VIOLATIONS OF THE TRUTH IN LENDING ACT</u>**

41.    Plaintiff Gaskins adopts all preceding paragraphs as if recited verbatim herein.

42.    Plaintiff Gaskins is a natural person.

43.    At all times relevant hereto, Defendants EasyKnock and EK Real Estate regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making Defendants a creditor within the meaning of the Truth-In-Lending Act, 15 U.S.C. § 1602(g) and Regulation Z §226.2(a)(17). Under Maryland law, a sale-leaseback transaction, like the one at issue in this case, is a "loan" a component of an "equitable mortgage." Under Maryland Law, a sale-leaseback transaction, like the one at issue in this case, is a "loan" a component of an "equitable

mortgage." See *UCC § 2A103(1)(j)* defines a "lease" as "a transfer of the right to possession and use of goods for a term in return for consideration, but a sale, including a sale on approval or a sale or return, or retention or creation of a security interest is not a lease."

44.    The transaction is a consumer credit transaction within the meaning of the Truth-In-Lending Act, 15 U.S.C. § 1602 and Regulation Z § 226.2. The security for the transaction is the primary residence of Gaskins.

45.    The Residential Real Estate Option Agreement included an arbitration clause, which requires the optionee to submit to arbitration with the American Arbitration Association unless the optionee submits a valid "Arbitration Opt-Out" waiver in writing within thirty (30) days of the execution of the agreement. However, the clause, which is buried in dense legalese in the contract and which ostensibly would require Gaskins to arbitrate with Defendants EasyKnock and EK Real Estate, is nullified in the plain language of the Truth-In-Lending Act and Regulation Z. That law and those regulations bar mandatory arbitration clauses in residential mortgage loans and home equity lines of credit.

46.    Defendants EasyKnock and EK Real Estate did not provide to Plaintiff Gaskins a Truth-In-Lending Disclosure Statement and as a result violated the requirements of the Truth-In-Lending Act in the following ways, among others:

A.    By failing to provide the required disclosures prior to the consummation of the transaction in violation of 15 U.S.C. §1638(b), §1639, and Regulation Z §226.17(b);

B.    By failing to make the required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. §1632(a), §1639, and Regulation Z §226.17(a);

C.    By failing to include the finance charges certain charges imposed by Defendants by Plaintiff incident to the extension of credit as required by 15 U.S.C. §1605 and Regulation Z §226.18(d);

D.    By failing to calculate and disclose finance charges on the amount financed per 15 U.S.C. § 1606 and Regulation Z §226.22;

E.      By failing to disclose that Gaskins had a right of rescission;

F.      By failing to disclose to Gaskins: "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan," as per 15 U.S.C. §1639; and

G.      By failing to meet the minimum standards for residential mortgage loans per 15 U.S.C. §1639(c), including the ability to repay standards and the prohibition on arbitration agreements in connection with Gaskins' principal dwelling.

47.     By reason of the aforesaid violations of the Truth-In-Lending Act and Regulation Z, Defendants are liable to Plaintiff Gaskins in the amount of twice the finance charge, actual damages to established at trial, attorney's fees and costs, and any other amounts provided for under 15 U.S.C. §1640.

## MARYLAND CONSUMER SALES PRACTICES AND MARYLAND DECEPTIVE TRADE PRACTICES

48.     Plaintiff Gaskins adopts all preceding paragraphs as if recited verbatim herein.

49.     Plaintiff is a consumer under MD. Commercial Law Code Ann. §13-301, Maryland's Consumer Protection Act ("MCPA"), because Plaintiff is an individual who engaged in a consumer transaction by residential mortgage, or alternatively a sale/lease, for purposes that are primarily personal, family or household.

50.     Defendants EK Real Estate and EasyKnock violated the MCPA when Defendants engaged in false, misleading, or deceptive acts that Plaintiff relied on to Plaintiff's detriment. Specifically, among other violations, Defendants breached the MCPA, as follows:

**MD. Commercial Law Code Ann. §13-301**

Unfair, abusive, or deceptive trade practices include any:

(1)     False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2)     Representation that:

(i)   Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

(ii)   A merchant has a sponsorship, approval, status, affiliation, or connection which he does not have;

(iii)   Deteriorated, altered, reconditioned, reclaimed, or secondhand consumer goods are original or new; or

(iv)   Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

(3)   Failure to state a material fact if the failure deceives or tends to deceive;

(4)   Disparagement of the goods, realty, services, or business of another by a false or misleading representation of a material fact;

(5)   Advertisement or offer of consumer goods, consumer realty, or consumer services:

(i)   Without intent to sell, lease, or rent them as advertised or offered; or

(ii)   With intent not to supply reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition;

(6)   False or misleading representation of fact which concerns:

(i)   The reason for or the existence or amount of a price reduction; or

(ii)   A price in comparison to a price of a competitor or to one's own price at a past or future time;

(7)   Knowingly false statement that a service, replacement, or repair is needed;

(8)   False statement which concerns the reason for offering or supplying consumer goods, consumer realty, or consumer services at sale or discount prices;

(9)   Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

(i)   The promotion or sale of any consumer goods, consumer realty, or consumer service;

(ii)   A contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention; or

(iii)   The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental;

(10)    Solicitations of sales or services over the telephone without first clearly, affirmatively, and expressly stating:

(i)    The solicitor's name and the trade name of a person represented by the solicitor;

(ii)    The purpose of the telephone conversation; and

(iii)    The kind of merchandise, real property, intangibles, or service solicited;

(11)    Use of any plan or scheme in soliciting sales or services over the telephone that misrepresents the solicitor's true status or mission;

(12)    Use of a contract related to a consumer transaction which contains a confessed judgment clause that waives the consumer's right to assert a legal defense to an action;

(13)    Use by a seller, who is in the business of selling consumer realty, of a contract related to the sale of single family residential consumer realty, including condominiums and town houses, that contains a clause limiting or precluding the buyer's right to obtain consequential damages as a result of the seller's breach or cancellation of the contract;

(14)    Violation of a provision of:

(i)    This title;

(ii)    An order of the Attorney General or agreement of a party relating to unit pricing under Title 14, Subtitle 1 of this article;

(iii)    Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act;

(iv)    Title 14, Subtitle 3 of this article, the Maryland Door–to–Door Sales Act;

(v)    Title 14, Subtitle 9 of this article, Kosher Products;

(vi)    Title 14, Subtitle 10 of this article, Automotive Repair Facilities;

(vii)    Section 14–1302 of this article;

(viii)    Title 14, Subtitle 11 of this article, Maryland Layaway Sales Act;

(ix)    Section 22–415 of the Transportation Article;

(x)    Title 14, Subtitle 20 of this article;

(xi)    Title 14, Subtitle 15 of this article, the Automotive Warranty Enforcement Act;

(xii)    Title 14, Subtitle 21 of this article;

(xiii)    Section 18–107 of the Transportation Article;

(xiv)    Title 14, Subtitle 22 of this article, the Maryland Telephone Solicitations Act;

(xv)    Title 14, Subtitle 23 of this article, the Automotive Crash Parts Act;

(xvi)    Title 10, Subtitle 6 of the Real Property Article;

(xvii)    Title 14, Subtitle 25 of this article, the Hearing Aid Sales Act;

(xviii)    Title 14, Subtitle 26 of this article, the Maryland Door–to–Door Solicitations Act;

(xix)    Title 14, Subtitle 31 of this article, the Maryland Household Goods Movers Act;

(xx)    Title 14, Subtitle 32 of this article, the Maryland Telephone Consumer Protection Act;

(xxi)    Title 14, Subtitle 34 of this article, the Social Security Number Privacy Act;

(xxii)    Title 14, Subtitle 37 of this article, the Online Child Safety Act;

(xxiii)    Section 14–1319, § 14–1320, or § 14–1322 of this article;

(xxiv)    Section 7–304 or § 8–801 of the Criminal Law Article;

(xxv)    Title 7, Subtitle 3 of the Real Property Article, the Protection of Homeowners in Foreclosure Act;

(xxvi)    Title 6, Subtitle 13 of the Environment Article;

(xxvii)    Section 7–405(e)(2)(ii) of the Health Occupations Article;

(xxviii)    Title 12, Subtitle 10 of the Financial Institutions Article;

(xxix)    Title 19, Subtitle 7 of the Business Regulation Article;

(xxx)    Section 15–311.3 of the Transportation Article;

(xxxi)    Section 14–1324 of this article;

(xxxii)    Section 14–1326 of this article;

(xxxiii)    The federal Military Lending Act;

(xxxiv)    The federal Servicemembers Civil Relief Act; or

(xxxv)    § 11–210 of the Education Article; or

(15)    Act or omission that relates to a residential building and that is chargeable as a misdemeanor under or otherwise violates a provision of the Energy

Conservation Building Standards Act, Title 7, Subtitle 4 of the Public Utilities Article.

51.    Further, Defendants EK Real Estate and EasyKnock violated the MCPA when

Defendants engaged in unconscionable consumer sales practices in their "Sale-Leaseback"

transaction scheme with false, misleading, or deceptive acts that Plaintiff relied on when

executing documents for the sale, lease, and repurchase option regarding the Property to

Plaintiff's detriment.

**MD Commerical Law Code. Ann. §13-303**

A person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in:

(1)    The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services;

(2)    The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services;

(3)    The offer for sale of course credit or other educational services;

(4)    The extension of consumer credit;

(5)    The collection of consumer debts; or

(6)    The purchase or offer for purchase of consumer goods or consumer realty from a consumer by a merchant whose business includes paying off consumer debt in connection with the purchase of any consumer goods or consumer realty from a consumer.

52.    Alternative, when considering the whole transaction as a residential mortgage under the

principles of equitable mortgage, Defendants EK Real Estate and EasyKnock violated MCPA

when Defendants engaged in deceptive consumer sales practices in their connection with the

origination of a residential mortgage through actions that were false, misleading, or deceptive

that Plaintiff relied on to Plaintiff's detriment. Specifically, among other violations, Defendants

breached the MCPA (MD Commercial Law Code Ann. §13-316), as follows:

(a)    (1)    In this section the following terms have the meanings indicated.

(2)    "Mortgage" includes a mortgage, deed of trust, security agreement, or other lien on 1 to 4 family residential real estate located in this State.

   (3) "Servicer" means a person responsible for collection and payment of principal, interest, escrow, and other moneys under an original mortgage.

(b) Within 7 days of acquiring mortgage servicing, a servicer shall send to the mortgagor a written notice containing the following information regarding the mortgage on the date of transfer:

   (1) The name, address, and telephone number of the new servicer and the address where mortgage payments are to be forwarded;

   (2) The principal balance and escrow balance;

   (3) The telephone number of the contact designated under subsection (c) of this section;

   (4) The responsibilities of the contact under subsection (c) of this section; and

   (5) A statement that the servicer's violation of this section will result in the servicer being held liable under subsection (e) of this section.

(c) (1) A servicer shall designate a contact to whom mortgagors may direct complaints and inquiries.

   (2) The contact shall respond in writing to each written complaint or inquiry within 15 days if requested.

(d) (1) A servicer shall make timely payments of the taxes or insurance premiums due under the mortgage so long as the mortgagor has paid an amount sufficient to pay the tax or insurance premium due and, with regard to the taxes, so long as the servicer is in possession of either the tax bill or notice from the taxing authority.

   (2) A servicer shall make timely payment of the water and sewer facilities assessments due under a lien on the residential real property for public water and wastewater facilities provided that:

     (i) The mortgagor has paid an amount sufficient to pay the assessment due; and

     (ii) The servicer is in possession of the assessment bill.

(e) (1) If a servicer fails to comply with any provision of this section, the servicer is liable for any economic damages caused by the violation.

   (2) The penalties provided in this section are in addition to any other applicable remedies.

(f) A servicer shall provide a toll–free telephone number through which any borrower residing in this State may direct telephone inquiries on outstanding loans during regular business hours.

53.     Defendants EK Real Estate and EasyKnock violated the MCPA when Defendants engaged in unconscionable action or course of action that, to Plaintiff's detriment, took advantage of Plaintiff's lack of knowledge, ability, or experience. Specifically, Defendants EK Real Estate and EasyKnock induced Plaintiff Gaskins into entering into a "loan" transaction which was prohibited by law concerning her homestead knowing that neither Defendant was qualified as a lender with the State of Maryland to lend against Plaintiff Gaskins' home. Defendants EK Real Estate and EasyKnock knew or should have known that Gaskins did not have the ability to pay back the loan on the onerous lending terms and rates and at charges that exceeded the maximum rates allowed by law.

54.     Defendants EK Real Estate and EasyKnock violated the MCPA when Defendants engaged in false, misleading, or deceptive acts or practices that Plaintiff relied upon to Plaintiff's detriment. Furthermore, the marketing materials sent to Plaintiff Gaskins by Defendant EasyKnock concerning the transaction referred to "accessing" and "releasing" the "equity" in her home thus confusing this type of transaction with a home equity loan.

55.     Gaskins did not discovery, and through the exercise of reasonable diligence could not have discovered, the occurrence of Defendants EK Real Estate and EasyKnock's false, misleading, and deceptive acts and practices until after she fell behind on rent payments and begin to be hounded by Defendants EK Real Estate and EasyKnock with daily reminders to make payments or the outstanding unpaid "rent" would be added to the annually escalating Option Agreement Fee price set forth in the Residential Real Estate Option Agreement at the sale of the home.

56.     Defendants' wrongful conduct was a cause of Plaintiff's injuries which resulted in the following damages:

      a.      Plaintiff is entitled to rescind the transaction or recover the actual economic damages;

      b.      Plaintiff is entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under Maryland Code.

### USURY UNDER THE MARYLAND CODE

56.     Plaintiff Gaskins adopts all preceding paragraphs as if recited verbatim herein.

57.     On or about August 16, 2021, Defendants EK Real Estate and EasyKnock loaned money to Plaintiff Gaskins disguised as a "Sale-Leaseback" loan transaction. The loan between Gaskins and Defendants EasyKnock and EK Real Estate, in which TVC Funding participated, only provided Gaskins with $27,507.94 in case for the Property.

Defendants EK Real Estate and EasyKnock had the property appraised to look like a $441,000.00 sale to them from Gaskins. From a purported sale of the property for the sum of $441,000.00 Plaintiff receieved a total value of $27,507.94. Disguised as a Tenant Lease Option on the HUD form, Defendants EK Real Estate and EasyKnock took a $147,100 Option Value, $13,186 Processing Fee, Rent Hold back fee of $6,336/month among other fees to inflate the sales price.

58.     After paying reverse mortgage which was $184,383.80, Defendants EK Real Estate and EasyKnock contracted for and received interest that exceeded the maximum amount allowed by law by charging excessive fees including without limitation to the following:

A.     Option Value - $147,100.00

B.     Processing Fee - $13,186

C.     Monthly Rent - $2,428

D.     Rent Hold Back - $6,336/monthly

E.     Repair Hold Back - $35,000.

F.      Excessive closing costs.

59.     Defendants' unlawful conduct caused injury to Plaintiff Gaskins which resulted in the

following damages:

A.      Statutory Penalties; and

B.      Attorney's fees

60.     Plaintiff Gaskins seeks unliquidated damages within the jurisdictional limits of this

Court.

61.     Plaintiff Gaskins is entitled to recover statutory penalties under Maryland law.

### ADDITIONAL VIOLATIONS OF MARYLAND
### FINANCIAL INSTITUTIONS CODE ANN. § 11-504

62.     Plaintiff Gaskins adopts all preceding paragraphs as if recited verbatim herein.

63.     At all times relevant hereto, Plaintiff Gaskins is considered a "Borrower" under the

Maryland Annotated Code and Defendants EasyKnock and EK Real Estate's "Sale-Leaseback"

transaction is "Residential mortgage loan" under the Maryland Annotated Code. *See* Maryland

Real Property Code Ann. § 7-101. This loan transaction was subject to the requirements of

Maryland Real Property Code Ann. § 7-101, *et seq*. (Residential Mortgage Loans).

64.     In connection with the loan transaction at issue in this case, Defendants EasyKnock and

EK Real Estate violated the Maryland Annotated Code, among other ways, by:

A.      Engaging in the transaction of business as a mortgage lender, mortgage servicer, or

mortgage broker without having first obtained a certificate of registration from the

superintendent of financial institutions for the principal office oand each branch office involved

in such business transactions requiring registration;

B.      Making false or misleading statements of a material fact, omissions of statements

required by state or federal law, or false promises regarding a material fact, through advertising

or other means, or engage in a continued course of misrepresentation;

C.    Engaging in the conduct that constitutes improper, fraudulent, or dishonest dealings;

D.    Knowling making, proposing, or soliciting fraudulent, false, or misleading statementson any mortgage loan document or on any document related to a mortgage loan;

E.    Engaging in any unfair deceptive, or unconscionable act or practice prohibited under federal and state laws; and

F.    Failing to disclose in any printed, televised, broadcase, electronically transmitted, or published advertisement relating to the registrant's or mortgage loan originator's services, including on any electronic site accessible through the internet, the business name of the registrant or mortgage loan originator and the unique identifier of the registrant or mortgage loan originator.

## **COMMON LAW FRAUD**

65.    Plaintiff Gaskins adopts all preceding paragraphs as if recited verbatim herein.

66.    Defendants EasyKnock and EK Real Estate are liable to Plaintiff for common law fraud, fraud by nondisclosure, fraudulent inducement.

67.    Specifically, as described throughout this Complaint:

a.    The Sale-Leaseback loan transaction is a transaction that involves real property in Maryland, namely the Property.

b.    Defendants EasyKnock and EK Real Estate made multiple misrepresentations, and they concealed or failed to disclose facts to Plaintiff despite a duty to do so. Among other things, as described more specifically above, EasyKnock and EK Real Estate falsely and misleadingly represented that they were legally permitted to enter into the loan transaction that is the basis of this suit; the Sale-Leaseback loan transaction was a home equity loan; Gaskins would receive approximately $ 28,000 at closing; Gaskins would maintain her 51.3% interest in the equity of her Property after the Sale-Leaseback loan transaction;

c.    Defendants made additional false, deceptive, and material representations in their marketing materials. As described above, Defendants' marketing materials described their Sale-Leaseback transaction to Gaskins as an opportunity to "release" the equity in her home, that Gaskins could "stay in [her] home,".

d.    Defendants also falsely represented, that Gaskins would "keep the money [she] would have spent on insurance and taxes" for her Property after the Sale-Leaseback of the Property and

eventual sale of the property to a third party. Unbeknownst to her, Defendants were passing through those charges to her on a monthly basis as part of the rent charged for her Property.

e.      Defendants falsely advertise that their process "lets you access funds you need without having to give up your home," and that "EasyKnock is a legit company that can be a great help to homeowners in a tight spot."

f.      Defendants made these misrepresentations and concealed/failed to disclose facts to induce Plaintiff to enter into the Sale-Leaseback transaction for her Property.

67.     For the common law fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from Defendants EasyKnock and EK Real Estate, her actual damages, punitive damages, costs of court, attorney's fees and pre-and post-judgment interest.

## CONSPIRACY

68.     Plaintiff Gaskins adopts all preceding paragraphs as if recited verbatim herein.

69.     Defendants EasyKnock, EK Real Estate, and TVC Funding are liable to Plaintiff Gaskins for participating in a conspiracy.

70.     Each of the Defendants was a member of a conspiracy. They conspired to commit acts of fraud and other statutory and common law torts, as described above. In so doing, the Defendants had a meeting of the minds to accomplish the wrongful acts described above, committed one or more acts in furtherance of the conspiracy to commit the unlawful causes of action described above and caused Plaintiff actual harm as a result of their conspiratorial conduct.

71.     Accordingly, Plaintiff is entitled to recover from each conspirator Plaintiff's actual damages and exemplary damages, as well as for such conspirator's joint **and** several liability with the other actors concerning each cause of action described above. In connection, with the statutory torts, Gaskins is entitled to recover from each conspirator, jointly and severally, her attorneys' fees, expert witness fees, deposition-copy costs, costs of court, and pre-and post-judgment interest.

## SUIT TO QUIET TITLE TO THE PROPERTY

72.     Plaintiff Gaskins adopts all preceding paragraphs as if recited verbatim herein.

73.     Plaintiff Gaskins inherited the property after her father died April 3, 2020. The decedent had a reverse mortgage on the property.

74.     Although, Defendant EK Real Estate and EasyKnock claimed that it was purchasing the property for $441,000.00, Gaskins only received $27,507.94 from those "sales" proceeds and executed the Lease, leasing back the property at a rental rate that exceeded similar properties in Baltimore, Maryland at the time of the "pretend sale" and leaseback. Thus , EK Real Estate "purchased" Gaskins property for far less than the appraised market value at the time of the purported sale, and all payments made (and charges debited) from Gaskins to EK Real Estate and EasyKnock in connection with the leaseback far exceed the fair market rental value of the property. For those reasons, the "sale-leaseback" transaction is deemed a loan under Maryland common law, all payments made from Gaskins to EK Real Estate and EasyKnock in excess of the sales price are considered interest subject to the Maryland Code, the deed conveyed as part of the transaction is VOID and no lien was ever legally attached to Gaskins' homestead property.

75.     At the time of the transaction, Defendant EK Real Estate borrowed from Defendant TVC Funding the sum of $294,000.00 Liber 24296 at folio 170 (the "Purchase DOT") and TVC Funding filed a Purchase DOT on the property. As a result, Plaintiff Gaskins sees to quiet title to the Property voiding the General Warranty Deed to Defendant, EK Real Estate and the Mortgage given by Defendant EK Real Estate to Defendant TVC Funding. Given that this transaction amounts to an equitable mortgage, transfer of the title to the Property to Defendant EK Real Estate was an impermissible and fraudulent transfer.

76.     Therefore, Gaskins asks the Court to find that Defendants EK Real Estate and TVC Funding have no interest, legal, equitable or otherwise to her property and that Plaintiff Gaskins is the rightful owner of the Property under Maryland Annotated Code.

## DECLARATORY JUDGMENT

77.    Plaintiff Gaskins adopts all preceding paragraphs as if recited verbatim herein.

78.    Plaintiff Gaskins is entitled to declaratory relief under the Maryland Uniform Declaratory Judgments Act,  Maryland Annotated Code, Courts and Judicial Proceedings Section 3-409. Plaintiff seeks the following declarations:

a.    The Property at issue in this dispute was Gaskins residential homestead;

b.    Defendants EasyKnock and EK Real Estate, and TVC Funding taking of a deed in connection with the Sale-Leaseback transaction at issue in this case is a deceptive trade practice under Maryland Law;

c.    Defendants' deed in connection with the underlying Sale-Leaseback transaction is void and no lien legally attached to Gaskins residential homestead property (the property) as a result of the purported sale;

d.    The Sale-Leaseback transaction at issue in this case is a "loan" under the doctrine of "equitable mortgage" in Maryland common law.

e.    The Tenant Lease Option, Rent, and Additional Rent are considered interest.

79.    An award of reasonable and necessary attorneys' fees in an amount as determined by the trier of fact to Plaintiff would be equitable and just and, therefore, authorized under Maryland law.

### JURY DEMAND

80.    Gaskins prays for a jury trial.

Plaintiff Gaskins respectfully prays that the Court enter Judgment in favor of Julie Gaskins jointly and severally against Defendants EK Real Estate Fund I, LLC, an Affiliate of EasyKnock, Inc, EasyKnock, Inc, and TVC Funding III, LLC, for the damages set forth herein and for such other and further relief, in law or at equity, to which she may be justly entitled.

DATED: April 27, 2023

Respectfully submitted,

_____

Julie A. Gaskins, pro se
2106 E. Baltimore Street
Baltimore, MD 21231